## W. T. RAWLEIGH CO. v. WALKER et al.

No. 16476—Opinion Filed April 13, 1926.

Rehearing Denied May 11, 1926.

**1. Guaranty—Validity as to Past and Future Transactions.**

Where a contract of guaranty expressly covers past and future transactions, and is supported by a consideration arising out of future transactions, it is good as to the whole.

**2. Commerce—Foreign Corporations in Interstate Commerce—Right to Sue.**

A nonresident corporation, engaged in the sale of its goods, wares and merchandise f. o. b. out of the state of Oklahoma upon orders of the buyer, transacts its business interstate, and is not required under section 43, art. 9, of the Constitution, to obtain a license or permit to transact such business as a prerequisite to enforce its said contract in the courts of the state.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by the W. T. Rawleigh Company, against R. W. Walker, Chas. Griffin, R. F. McFarling, and C. F. Kerker, to enforce a contract of guaranty. Judgment for defendants, and plaintiff appeals. Reversed.

Arrington & Evans, for plaintiff in error.

Saunders & Emerick, for defendants in error.

Opinion by THREADGILL, C. This action was brought by the W. T. Rawleigh Company, a corporation, of Illinois, as plaintiff, against R. W. Walker, Chas. Griffin, C.

F. Kerker, and R. F. McFarling, as defendants, to recover on a contract of guaranty. Plaintiff was engaged in the manufacture and sale of drugs and drug store supplies at wholesale, with its principal place of business at Freeport, Ill., and with a branch house at Memphis, Tenn. During the year 1920 plaintiff sold to defendant, R. W. Walker, f. o. b. Memphis, certain goods and wares at wholesale in the sum of $1,095, on which said defendants paid the sum of $234.80. leaving a balance due of $870.20. On January 14. 1921, plaintiff, designated as seller, entered into a contract with R. W. Walker, as buyer, in which it was agreed that the seller would sell its goods to the buyer. f. o. b. Memphis, Tenn., or at his option, f. o. b. Freeport, Ill., or at any other point agreed on, upon signed orders for such goods. It was agreed that the buyer should pay the invoice price for the goods, also pay "any balance due the seller at the date of the acceptance of this renewal contract by cash or by installment payments satisfactory to the seller." It was agreed that the contract should expire by limitation on December 31, 1921, and if there was no renewal, the full amount due, under the contract, should be due and payable promptly. It was finally agreed that the written contract includes and constitutes the whole, only, and entire agreement between the parties, and could only be altered, in any particular, by an agreement in writing, and after the corporate seal of the seller was affixed to the same. This contract was signed by W. T. Rawleigh, as president, for the company, and by R. W. Walker for himself, and was marked at the bottom of the left-hand corner "Accepted 1-14-21 at Memphis, Tenn.," and on the same corner is the corporate seal of the company. Under this contract, with no heading or date, but as above stated, the following agreement was made:

"For and in consideration of the sum of $1, to me in hand paid, the receipt of which is hereby expressly confessed and acknowledged, or in consideration of the above named seller extending further credit to the said buyer, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Company, the above named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this 'contract of guaranty by the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms

of the above and foregoing instrument by the buyer named as such therein, and to all of the terms, provisions, and agreements contained in said instruments we fully assent and agree, hereby waiving notice of acceptance by the seller, of this contract of guaranty, and all notice of any nature whatsoever, and agree that the written acknowledgment by said buyer of the amount due or owing on his account, or that any judgment rendered against him for moneys due the seller, shall in every and all respects bind and be conclusive, jointly or severally, against the undersigned. And we further agree that in any suit brought on this contract of guaranty by the seller no other or further proof shall be required of it than to establish the amount or sum of money due and owing to it from the said buyer, and, when so proven, shall be conclusive and binding upon the undersigned, and further, that it shall not be necessary for said seller in order to enforce this contract of guaranty to first institute such against said buyer nor exhaust its legal remedies against him. And agree that any extension of the time of payment or payments to said buyer shall not release us from liability under this contract of guaranty.

"It is hereby mutually understood and agreed that this contract of guaranty is conclusive and binding on the party or parties who sign it. whether the same is signed by any other party or parties, or not, and that any statement or representation made by any person as to the undertaking of the guarantor or guarantors other than as herein expressed, or as to who or how many parties are to sign this guaranty, shall in no wise affect the rights of the company; and it is mutually understood that this is to be a continuing guaranty; and any notice in any way affecting the responsibility or liability of the signers hereunto, in order to become effective and binding upon the above-named seller, shall be reduced to writing and delivered by registered mail to the office of the said seller at Memphis, Tenn."

This contract was signed by Chas. Griffin, R. F. McFarling, and C. F. Kerker. These men were certified by three men in the banking business in Shawnee as worthy of confidence. There was an indorsement on the entire agreement as follows:

"Town Trade 1921 Renewal Contract. Renewal contract with name—R. W. Walker, Okla. Received Dec. 13, 1920. Investigated Approved by Accepted Jan. 14, 1921. Copy mailed. Exm'd & O. K'd by R. M. N.

The buyer's orders were filled by the plaintiff for the year 1921, and, at the end of the year, the said buyer was indebted to the plaintiff, in addition to the original indebtedness of $870.20, the sum of $76.57, making the sum total of $946.77, for which

it brings this action against the defendants upon the contract of guaranty. Defendants R. F. McFarling and C. F. Kerker defended on the grounds that plaintiff was a foreign corporation and had no license to do business within the state of Oklahoma; that their signatures were obtained by fraud; and there was no consideration for the contract as to the $870.20. Plaintiff filed demurrer to the defense, which was overruled, and then filed reply of general denial. The cause was tried to the court and jury March 24, 1924, and at the close of plaintiff's evidence the court sustained a demurrer to the same, took the case from the jury, and rendered judgment for de.endants, and plaintiff excepted and brings the case here for review, asking for a reversal and new trial on two grounds: First, error of court in sustaining the demurrer to the evidence; second, error of court on questions of law during the trial.

1. Under the first assignment of error plaintiff discusses defendants' theory of the case, as set out in their demurrer to the evidence, which was sustained by the trial court. They contended that there was no consideration for the $870.20, which was the amount owing by R. W. Walker to plaintiff at the time the guaranty contract was executed. It is contended that the $1 consideration, expressed in the guaranty contract, was formal and not paid. But it must be observed said contract provided the $1 consideration, "or in consideration of the above-named seller extending future credit to said buyer," etc.

Now, the question arises as to whether or not a contract to make future sales on credit to the principal is sufficient consideration for a contract of guaranty to pay for such sales as well as any balance due from former sales. This question finds answer in 32 Cyc. page 56, as follows:

"But if the surety becomes responsible for advancements to be made as well as for the former debt, and such future advancements are made, there is a consideration for the entire indebtedness, past and future."

See, also, the following cases which support this rule: 28 C. J. page 919; Ball v. White, 50 Okla. 429, 150 Pac. 901; Sawyer v. Bahnsen et al., 102 Okla. 41, 226 Pac. 344; Clements et al. v. Jackson County Oil & Gas Co. et al., 61 Okla. 247, 161 Pac. 216; Riddle v. Hudson, 68 Okla. 172, 172 Pac. 921; Elliott on Contracts, section 252.

It appears from the record that plaintiff pleaded the written instruments upon which its action was based, and these instruments recited a consideration, and the execution of these instruments is not denied by the defendant, and the burden of proving consideration was not upon plaintiff but was presumed, and the burden of showing a lack of consideration was upon defendant. Reeves & Co. v. Dyer et al., 52 Okla. 750, 153 Pac. 850; Miller v. Oil Well Supply Co., 79 Okla. 135, 191 Pac. 1094.

Defendants make some argument to the effect that the contract of guaranty did not become effective because there was no notice of acceptance given the guarantor, and the second paragraph of the syllabus, in the last-above cited case, answers this argument adversely to their contention:

"Where a guaranty is made in response to an offer by the guarantee, its delivery to the guarantee completes the contract, and notice of its acceptance by the guarantee or an intention to act thereunder is not necessary."

To the same effect is the case of T. & H. Smith & Co. v. Thesmann, 20 Okla. 133, 93 Pac. 977. We must therefore conclude that plaintiff's contention on this point is correct, and failure to prove consideration in the case was no ground for defendants' demurrer.

2. The second ground for the demurrer was that the plaintiff was a foreign corporation and had no legal permit to transact business in the state. Section 43, art. 9, Oklahoma Constitution.

The question here to be determined is whether or not the plaintiff's business transactions, selling its drugs and drug store supplies, was interstate or intrastate business. The contract of sale was for the goods to be delivered to defendant Walker, f. o. b. Memphis, Tenn., or any other place where it had a branch house, and the evidence shows this was the means of transacting the business. The question involved here has been passed on by this court adversely to defendants' demurrer. In the case of Dr. Koch Vegetable Tea Co. v. Schumann et al., 42 Okla. 60, 139 Pac. 1133, the court said:

"A nonresident corporation, engaged in the manufacture and sale of certain proprietary medicines. entered into a written contract with a resident of Oklahoma, whereby it was agreed that certain of its products should be sold and delivered f. o. b. at a point outside of the state, and should be shipped into Oklahoma and resold at retail. Held, this. did not constitute transacting business in the state, within the provisions of section 1335, nor incur the penalty prescribed in section 1338, Rev. Laws of 1910.

"Such nonresident corporation, being en-

gaged in interstate commerce, was not denied the right of suing in the courts of Oklahoma to enforce its contract, although it had not procured a license or permit to do business in the state of Oklahoma."

See, also, the following cases: Harrell v. Peters Cartridge Co., 36 Okla. 684, 129 Pac. 872; Chicago Crayon Co. v. Rogers et al., 30 Okla. 299, 119 Pac. 630; J. R. Watkins Medical Co. v. Combs et al., 66 Okla. 126, 166 Pac. 1072.

We have examined the authorities cited by defendants in support of the trial court's judgment, and we do not think they are in conflict with the cases above cited. They are based upon a different state of facts and not applicable here.

We must, therefore, conclude that the court committed error in sustaining the demurrer to plaintiff's evidence, and rendering judgment for defendants. The cause is reversed for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 28 C. J. p. 919 § 51; 12 R. C. L. p. 1077; 2 R. C. L. Supp. p. 1546. (2) 14a C. J. p. 1255 § 3956; p. 1286 § 3993; 12 R. C. L. p. 74; 2 R. C. L. Supp. 1386; 4 R. C. L. Supp. p. 745.