

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

This Opinion
Overrules Opinion
# O-4295

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. 0-4295A
Re: Under Article 4706, Vernon's
Annotated Civil Statutes, and
. other articles in similar terms
governing the lawful investment
of various funds of the different
types of insurance companies, do
investments lawfully made under
the provisions of such articles as
they originally stood, remain law-
ful after the amendment of such
articles, and related questions.

This opinion is in lieu of opinion No. 0-4295, which is hereby with-
drawn.

Your letter requesting the opinion of this department on the questions
stated therein reads as follows:

"Article 4706 R. C. S. 1925 was amended by Acts 1939, 46th Leg.,
p. 394, Sec. 1; and subdivision (d) thereof was further amended by Acts
1941, 47th Leg., S.B. 82, Sec. 1. We desire your opinion upon the fol-
lowing points:

"1. Under Article 4706 and other articles in similar terms govern-
ing the lawful investment of various funds of the different types of insur-
ance companies, do investments lawfully made under the provisions of
such articles as they originally stood, remain lawful after the amendment
of such articles; are such amendments operative only prospectively and
not retroactively in the absence of a contrary intent plainly evidenced in
the provisions of the amended articles themselves; and, therefore, is
this Department justified in not requiring the affected companies to con-
vert their existing lawfully made investments thereafter into types of in-
vestments conforming to the statutory amendments?

"2. Under Article 4706, subdivision (d), as amended in 1941, in order for an investment in corporate stock to be legal thereunder must it be in stock of a corporation which at the time of the investment shall have been in existence for a minimum period of five years, so as to judge its qualifications thereunder by its record for paying dividends and obligations?

"3. If number 2 is answered affirmatively, then in judging the qualifications of such corporate stock must this Department find that the corporation has not defaulted in the payment of any legal obligation when due for a minimum period of five years immediately preceding the date of investment?

"4. Under such subdivision (d) must this department take into consideration the record of such corporation for paying dividends over the entire minimum period of five years immediately preceding such investments?

"5. If so, must the corporation have paid a dividend each year during such minimum five year period immediately preceding the investment, or is the corporation sufficiently qualified as a dividend-paying corporation by reason of having paid during such minimum five year period immediately preceding investment one or more, but less than five, dividends?

"6. Must the dividend-paying record be based only upon common stock or only upon preferred stock, or upon other types of stock, or upon a combination of one or more or all of its stocks?"

In connection with the foregoing request, we are informed that you, as Chairman of the Texas State Board of Insurance Commissioners, have suggested that the fire and casualty insurance companies incorporated under the laws of this State, express to the Attorney General of Texas their view as to the proper answers to the questions propounded by you.

In response to your suggestion, several companies through their attorneys have prepared and submitted briefs to this department pertaining to the questions here involved. A brief by Honorable W. H. Shook of the firm of Shook & Shook, Dallas, Texas, signed by the firms of Strasberger, Price, Holland, Kelton & Miller; Lightfoot, Robertson & Gano; and Terry, Cavin & Mills; and a brief of the firm of Vincent, Elkins, Weems & Francis, Houston, Texas, by Honorable C. E. Bryson, have been presented for our consideration in connection with the foregoing questions.

We were glad to have the suggestions contained in these briefs although we have been unable to concur in all the positions taken by the learned counsel therein.

Article 4706, Vernon's Annotated Civil Statutes, provides:

"No company, except any writing Life, Health, and Accident Insurance, organized under the provisions of this Chapter shall invest its funds over and above its paid-up capital stock in any other manner than as follows:

"(a) In bonds of the United States or of any of the States of the United States provided such bonds are, at the time of purchase, interest-bearing or not in default.

"(b) In bonds or first liens on unincumbered real estate in this State or in any other State, country, or province in which such company may be duly licensed to conduct an insurance business, and providing in each instance such real estate shall be worth at least forty (40) per cent more than the amount loaned thereon. The value of such real estate shall be determined by a valuation made under oath by two (2) freeholders of the county where the real estate is located, and if the buildings are considered a part of the value of the real estate, they must be insured against loss by fire for not less than sixty (60) per cent of the value thereof, with loss-payable clause to such company.

"(c) In bonds or other interest-bearing evidence of indebtedness of any county, incorporated city, town, or school or sanitary or navigation district, such navigation district to contain a population of not less than three hundred and fifty-nine thousand (359,000) according to the last preceding Federal Census, in this or any other State in which said company may be duly licensed to conduct an insurance business, if such evidences of indebtedness are issued by authority of law and if interest upon them has never been defaulted.

"(d) In the stocks or bonds or other evidences of indebtedness of any solvent dividend-paying corporation incorporated under the laws of this State, or of the United States, or of any State, country, or province in which such company may be duly licensed to conduct an insurance business.

"(e) In loans upon the pledge of any mortgage, stock, or bonds, or other evidence of indebtedness, acceptable as investments, under the terms of this law if the current value of such mortgage, stock, bonds or other evidence of indebtedness is at least twenty-five (25) per cent more than the amount loaned thereon.

"(f) That the restrictions contained in Subsection (b) hereof that such real estate shall be worth not less than forty (40) per cent of the amount loaned thereon, and that the value of such real estate shall be determined by a valuation made under oath by two (2) freeholders of the county where the real estate is located, and if buildings are considered as a part of the value of such real estate, they must be insured for the benefit of the mortgagee, shall not apply to loans secured by real estate in Texas which are insured by the Federal Housing Administrator.

"(g) In interest-bearing notes or bonds of the University of Texas issued under and by virtue of Chapter 40, Acts of the Forty-third Legislature, Second Called Session."

Senate Bill No. 82, Acts 1941, 47th Legislature, Regular Session, including the caption, reads as follows:

"S. B. No. 82

"An Act to amend Section (d) of Article 4706, Revised Civil Statutes of 1925, as amended by House Bill No. 928, Acts of the 46th Legislature, Regular Session, page 394, and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That Section (d) of Article 4706, Revised Civil Statutes of 1925, as amended, by House Bill No. 928, Acts of the 46th Legislature, Regular Session, page 394, be, and same is hereby changed and amended so as to hereafter read as follows:

"'(d) In the capital stock, bonds, debentures, bills of exchange or other commercial notes or bills and securities of any solvent dividend paying corporation which has not defaulted in the payment of any of its obligations for a period of five (5) years; provided that no such insurance company shall invest in its own stock, and provided that no such insurance company shall invest any of its funds in any stock on account of which the holders or owners thereof may, in any event, be or become liable to any

assessment except for taxes, nor in the stock of any oil, manufacturing or mercantile corporation organized under the laws of this State unless such corporation has a net worth of not less than Two Hundred Fifty Thousand ($250,000.00) Dollars provided that such corporation is solvent, dividend paying, and has not defaulted in the payment of any of its obligations for a period of five (5) years, nor in the stock of any oil, manufacturing or mercantile corporation not organized under the laws of this State unless such corporation has a capital stock of not less than Five Million ($5,000,000.00) Dollars, and unless such corporation is solvent, dividend paying, and has not defaulted in the payment of any of its obligations for a period of five (5) years.'

"Sec. 2. The fact that many solvent dividend paying corporations are incorporated under the laws of States in which certain Texas insurance companies are not licensed to conduct an insurance business; and the fact that some question has been raised as to whether or not the present law is ambiguous; and the fact that there should be no discrimination between Texas companies, and the further fact that the calendar of both Houses is becoming crowded and it is desired that this Act take effect as soon as possible, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

With reference to your first question, it is the general rule of statutory construction that a statute will not be given a retrospective effect even in states where the Legislatures can pass retroactive statutes, unless the intention that the statute shall have retrospective effect is clearly evidenced by the words of the statute itself. (Orr v. Rhine, 45 Tex. 353; 59 Corpus Juris. 1169, § 694)

It is stated in the case of Texas & N. O. R. Co. et al. v. Wells-Fargo Express Co., 108 S.W. 172, which was affirmed by the Supreme Court in 110 S.W. 38:

"The general rule in the construction of legislative acts forbids a retroactive effect being given to an act unless the intention that it shall so operate be expressly stated in the act or is clearly shown by necessary implication for the language used in the act."

The Supreme Court, in affirming this case, used this language:

"The case is controlled, as was held by the court below, by the well established rule of construction that statutes cannot be held to have

a retroactive or ex post facto effect unless their language compels."

It is stated in the case of Piedmont Life Insurance Co. v. Ray, 50 Tex. 519:

"It is a well settled rule that statutes are always held to operate prospectively unless contrary construction is evidently required by their plain and unequivocal language."

In the case of Mellinger v. City of Houston, 3 S.W. 249, Judge Stayton, speaking for the Supreme Court, said:

"In the absence of constitutional restrictions upon the subject, it is almost universally accepted as a sound rule of construction that a statute shall have only a prospective operation unless its terms show clearly a legislative intention that it shall have a retroactive effect."

After carefully considering Article 4706, supra, and the amendment thereto, we fail to find any language indicating that the legislative intention was that the act should have a retroactive effect.

Therefore, in view of the foregoing, it is our opinion that investments lawfully made under the provisions of Article 4706, supra, and similar articles as they originally stood remain lawful after the amendment of such articles. It is our further opinion that the amendment to Subdivision (d) of said Article (4706) operates prospectively and not retroactively, there being a total absence of a contrary intent plainly evidenced in the provisions of the amended article. And the department is justified in not requiring the affected companies to convert the existing lawfully made investments which were acquired prior to the amendment of said article into types of investments conforming to statutory amendments, for the reason that the Department of Insurance is without authority under the provisions of the article referred to, or any other law which we have been able to find, to make any such requirements.

The answers to your remaining questions involve a proper construction of that portion of the 1941 amendment to Article 4706 (S. B. 82, Acts of 47th Leg., R. S., p. 564), which reads:

"Of any solvent dividend paying corporation which has not defaulted in the payment of any of its obligations for a period of five (5) years."

It has been suggested that the language "for a period of five years" does not necessarily refer to any particular period of time and that a corporation whose stock or commercial paper is being considered for investment by fire and casualty insurance companies would meet this standard if it had not defaulted in any of its obligations during the period of its corporate existence, even though it may have been in existence for a period less than five years.

The other interpretation of the 1941 amendment is that the language above quoted should be construed as though it read:

"Of any solvent dividend-paying corporation which has paid all of its obligations for a period of five years."

We are of the opinion that the language mentioned is subject to the two constructions but that the latter construction is the correct one.

The word "for" preceding the phrase "a period of five years" means "during" or "throughout". Reading it together, the phrase "during or throughout a period of five (5) years" means five years or more. Cunningham v. State, Tex. Civ. App., 44 S.W. (2d) 739, Finlayson v. Peterson, 67 N.W. 952, 5 N.D. 587, 33 L.R.A. 532, Liverpool & London & Globe Ins. Co. v. Biggers, 71 Okla. 47, 175 Pac. 242. In the latter case, the court said:

"The preposition 'for' immediately preceding the clause 'a period of two years,' as used, means during two years from the termination of the agency; the word 'for' means of itself duration when it is used in connection with time."

It is only by reading the word "for" as meaning within or less than, that one is able to arrive at an interpretation of the quoted language which supports the view first mentioned.

Section 6 of Article 10, Revised Statutes, 1925, provides that "In all interpretations, the Court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy."

The fundamental rule of construction to which all others must yield is stated in Texas Jurisprudence to be that "the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment. Such intent having been ascertained, the Court will then seek to construe the statutes so as to give effect to the purpose of the Legislature, as to the whole

and each material part of the law, even though this may involve a departure from the strict letter of the law as written by the Legislature." 39 Tex. Jur. 168, 169.

Looking to the 1941 amendment for evidence of legislative intent, we find in the emergency clause a statement "that many solvent dividend-paying corporations are incorporated under the laws of states in which certain Texas insurance companies are not licensed to conduct an insurance business." This would indicate that the only purpose of the 1941 amendment was to eliminate from the old law the restriction against certain Texas insurance companies investing in the stock and commercial paper of corporations which were incorporated in states in which the insurance company did not do business.

On investigation, we find that the 1941 amendment to Article 4706, as found in the statutes, was offered and adopted in the Senate as a complete substitute for the body of the bill which was originally introduced as Senate Bill No. 82. Senate Journal, Reg. Session, 47th Leg., (1941) p. 1214. The body of Senate Bill No. 82 as originally offered read as follows:

"(d) In the stock or bonds or evidences of indebtedness of any solvent dividend-paying corporation incorporated under the laws of this State, or of the United States or of any State." (See original bill on file with Secretary of State.)

The emergency clause was written with reference to this language as contained in the original bill, and it was not changed after the amendment was adopted. Therefore, we cannot attach any significance to the recitations of fact as contained in the emergency clause since these recitations had reference to Senate Bill No. 82 as originally introduced and do not indicate any legislative intent with reference to the amendment which was later enacted into law.

Looking for other statutes relating to the same subject, we find that the 1941 amendment to Article 4706 is an adaptation of Paragraph 3 of the 1939 amendment to Article 4725, which governs investments of surplus funds of life insurance companies. The life insurance statute must be construed as setting up a standard of five year corporate existence by the use of identical language as is used in the 1941 amendment to Article 4706 because there is a further provision in the life insurance statute that no investments can be made in oil and manufacturing companies of less than five

million capital "underline unless such corporation has paid dividends for a period of five years underline and has not defaulted in the payment of any of its debts for a period of five years." The underscored language clearly requires a five year period of dividend payments and when read in connection with the language "has not defaulted in the payment of any of its debts for a period of five (5) years" shows that the last quoted language also requires a five year period of paying its debts. Since Article 4725 and the 1941 amendment to Article 4706 deal with the same general subject, have the same purpose, and relate to the same class of things, they are in pari materia and the identical language appearing in each statute must be given the same meaning. 39 Tex. Jur. 253, 254. The 1941 amendment to Article 4706 therefore requires in addition to solvency and dividend payments a five year period of corporate existence during which the corporation has paid all of its obligations before the stock or commercial paper of such corporation shall be eligible as a source of investment for funds of fire and casualty insurance companies over and above their paid-up capital stock.

We also find that Acts of 1929, 41st Legislature, Regular Session, page 497, contained the language "for a period of at least five years next preceding the date of such investment," in reference to investments of life insurance companies. Acts of 1935, 44th Legislature, Regular Session, page 28, in reference to the same subject matter contains the following language, "the capital stock, bonds, bills of exchange, or other commercial notes or bills and securities of any solvent dividend-paying corporation which has not defaulted in the payment of any of its obligations for a period of five years."

Article 4766, Vernon's Annotated Civil Statutes in defining "Texas securities" under the Robertson Law contains the language "for a period of at least five years next preceding the date of such investment."

As far as we have been able to ascertain, those officials who have been charged with the enforcement of these several statutes have interpreted them as meaning that a corporation must have had a record of paying its debts for a period of five years next preceding the date of the investment in order for its stock or commercial paper to be eligible as investments for life insurance companies. A contemporaneous construction by persons charged with the enforcement of these laws is entitled to consideration as an aid to interpretation. 39 Tex. Jur. 234.

From a general view of the whole enactment and considering the old law, the evil and the remedy, we are of the opinion that the 1941 amendment to Article 4706 is a regulatory measure prescribing positive standards

to govern the investment of funds of certain insurance companies; that the principal intent on the part of the Legislature in enacting the law was to make investments of these insurance companies conform more nearly to investments theretofore authorized for life insurance companies, and that the act should be liberally construed in order to accomplish the purpose for which it was enacted. Article 10, paragraph 8, Revised Statutes of 1925; 24 Tex. Jur., 1321; 39 Tex. Jur. 180, 217; Wortham v. Walker, Land Com., 133 Tex. 255, 128 S.W. (2d) 1138, Syl. 12.

We accordingly answer your second, third and fourth questions in the affirmative.

Our answer to your fifth question is that the corporation whose stock is on a dividend-paying basis at the time of the loan or purchase meets the requirements of the 1941 amendment to Article 4706.

Our answer to your sixth question is that the type of stock which the insurance company desires to loan upon or purchase is the one which must be on a dividend-paying basis.

Trusting that the foregoing fully answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Fagan Dickson*

Fagan Dickson
Assistant

FD:AMM

APPROVED JUL 7, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

This opinion has been considered and approved in full conference.